**NICHOLAS & TOMASEVIC, LLP**
   Craig M. Nicholas (SBN 178444)
   Shaun Markley (SBN 291785)
225 Broadway, 19ᵗʰ Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org

Attorneys for Plaintiffs
DONNIE SANCHEZ BARRAGAN, ARACELI BARRAGAN, and
JEREMEY BURCHAM Individually and on behalf of others similarly situated

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNIE SANCHEZ BARRAGAN ARACELI BARRAGAN, and JEREMEY BURCHAM, individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> HOME DEPOT U.S.A., INC., a Delaware Corporation, <br><br> Defendants. | Case No.: 3:19-cv-01766-AJB-AGS <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT FOR:** <br><br> **1. FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS REFLECTING ALL WAGES, HOURS WORKED, AND PAY RATES;** <br><br> **2. FAILURE TO PAY OVERTIME;** <br><br> **3. FAILURE TO PAY ALL WAGES DUE DURING EACH PAY PERIOD;** <br><br> **4. FAILURE TO PAY ALL WAGES DUE UPON TERMINATION;** <br><br> **5. VIOLATION OF CALIFORNIA'S UNFAIR COPMETITION LAW.** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs DONNIE SANCHEZ BARRAGAN, ARACELI BARRAGAN and JEREMEY BURCHAM ("Plaintiffs") bring this action against Defendant HOME DEPOT U.S.A., INC., a Delaware Corporation ("Home Depot"), on behalf of themselves and all others similarly situated, and allege on information and belief as follows:

# I.   INTRODUCTION

1.     Home Depot is one of the largest home improvement companies in the United States.   Home Depot owns and/or operates hundreds of retail stores throughout California, selling tools, construction products and services to California customers.

2.     Plaintiffs and the Class Members are current and former non-exempt employees who worked at Home Depot's retail stores throughout California.   On behalf of themselves and the putative class, Plaintiffs bring this action for two principal violations of California labor laws.

3.     First, Defendant failed to provide Plaintiffs and the Class Members with accurate itemized wage statements at the end of each pay period.   Specifically, Defendant did not provide wage statements showing "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate," as required by California Labor Code section 226.

4.     Second, as to Plaintiff Burcham, Defendant failed to properly calculate the regular rate of pay and corresponding overtime wages owed as a result of periodic flat sum incentive bonuses. Home Depot used the federal method to the exclusion of California's more protective method of calculating overtime obligations stemming from these additional wage payments. This resulted in unpaid overtime, a failure to pay all wages due upon termination, failure to properly report overtime due on wage statements, and derivative violations of California's Unfair Competition Law (UCL).

5.     Third, Defendant failed to properly pay remedies associated with meal and/or rest period violations under California Labor Code section 226.7, and failed to pay the correct amounts for "reporting time" pay under IWC Wage Order No. 2-2001(5) and Labor Code 1194.

6.     Plaintiffs and the Class Members bring this complaint to recover from the above-mentioned employment practices and hereby seek all back-pay, unpaid

wages, penalties, liquidated damages, interest, and all other remedies to which they are entitled by law.

## II.   **JURISDICTION AND VENUE**

7.     Home Depot removed this case from state court pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453. *See* ECF No. 1.

## III.   **PARTIES**

8.     Plaintiff Donnie Sanchez Barragan is, and at all times mentioned was, an individual residing in the County of San Diego, California.  Mr. Sanchez was employed by and worked for Home Depot as a non-exempt (hourly) sales representative in Home Depot's Otay Mesa retail store in the State of California, County of San Diego.  As a retail sales employee, Mr. Sanchez sold various home improvement products and services to Home Depot's customers. Home Depot employed Mr. Sanchez from approximately July 2016 through November 2018.

9.     Plaintiff Araceli Barragan is, and at all times mentioned was, an individual residing in the County of San Diego, California.  Ms. Barragan was employed by and worked for Home Depot as a non-exempt (hourly) sales representative in Home Depot's Imperial Beach retail store in the State of California, County of San Diego.  As a retail sales employee, Ms. Barragan sold various home improvement products and services to Home Depot's customers. Home Depot employed Ms. Barragan from approximately October 2015 through April 2019.

10.     Plaintiff Jeremey Burcham is, and at all times mentioned was, an individual residing in the County of Alameda, California.  Mr. Burcham was employed by and worked for Home Depot as a non-exempt (hourly) sales representative in Home Depot's Fremont retail store in the State of California, County of Alameda.  As a retail sales employee, Mr. Burcham sold various home improvement products and services to Home Depot's customers. Home Depot employed Mr. Burcham from approximately October 2017 through February 2019.

11.    Plaintiffs are informed and believe Home Depot is, and at all times mentioned was, an active corporation organized and existing under and by virtue of the laws of the State of Delaware with principal place of business in Atlanta, Georgia. Home Depot does business in the County of San Diego.   Home Depot employed Plaintiffs and the Class Members during the Class Period, defined *infra*, at its retail stores throughout California.

## IV.    CLASS ACTION ALLEGATIONS

12.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other similarly situated Class Members.

13.    ***Class Definitions*:**

a.   The Pay Stub Class is defined as follows: All current and former non-exempt employees who worked for Defendants in California and received overtime adjustments on their wage statements labeled "FLSA OTADJ" or other analogous designations.

b.   The Overtime Class is defined as follows: All current and former non-exempt California employees who received the a flat sum, non-percentage based payment (e.g. $100) from an incentive bonus plan like Success Sharing prior to June 2018.

c.   The Unpaid Regular Wages Class consists of two subclasses:

i.   The Meal/Rest Premium Subclass is defined as follows: All current and former non-exempt California employees who (1) received a premium payment for a non-complaint meal and/or rest break, paid at their base hourly rate and (2) received a Success Sharing or other bonus payment covering the period of time when the premium payment was made.

        ii.   The Reporting Time Pay Subclass is defined as follows: All current and former non-exempt California employees who (1) received reporting time pay (e.g. IWC Wage Order No. 2-2001(5)), paid at their base hourly rate and (2) received a Success Sharing or other bonus payment covering the period of time when the reporting time pay was made.

14.    Excluded from the Class are: (1) Defendants, entities in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and any member of the judge's immediate family.

15.    Plaintiffs reserves the right to modify these definitions prior to certification.  This includes, but is not limited to, providing greater specificity or dividing the Classes into further subclasses.

16.    ***Class Period***:  The Class Period for the Pay Stub Class shall be one year prior to the initiation of this action in state court through the date of final resolution. The Class Period for the Overtime Class and the Unpaid Regular Wages Class shall be four years prior to the initiation of this action in state court through the date of final resolution.

17.    ***Numerosity***:  The potential members of the Class are so numerous that joinder of all Class Members would be impractical, if not impossible.  The precise number of Class Members are unknown to Plaintiffs.  However, the identities of the members of the Class are readily ascertainable through Defendant's records.  The true number of Class Members is known by Defendant and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

18.    ***Common questions of law and fact***:  There are numerous questions of law and fact common to the two Classes, and the disposition of the claims of the Class

Members in a single action will provide substantial benefits to all parties and to the Court. These issues include:

    a.  Whether Home Depot complied with Cal. Labor Code section 226(a) in issuing wage statements for overtime payments stemming from bonus payments;

    b.  Whether Home Depot had a good faith belief that it need not comply with section 226(a) such that penalties are not warranted under section 226(e);

    c.  Whether Home Depot properly calculated the "regular rate" for purposes of paying overtime under California Labor Code 510 and California's Wage Orders;

    d.  Whether Home Depot failed to pay meal and/or rest premiums at the correct rate of pay;

    e.  Whether Home Depot failed to pay reporting time pay at the correct rate of pay;

    f.  Whether Home Depot failed to pay all wages due upon termination in violation of California law;

    g.  Whether Home Depot acted unlawfully or unfairly under the UCL in failing to pay all regular and overtime wages due to employees as a result of bonus payments.

19.   ***Typicality***:  Plaintiffs' claims are typical of the claims of the Classes. Like all Class Members, Plaintiffs suffered the alleged violations of California law and resulting damages.

20.   ***Adequacy of Representation***.  Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have retained counsel highly experienced in wage and hour class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs have no adverse or antagonistic interests to those of the Class.

21.   ***Superiority***.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to it.  Furthermore, even if Class Members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

22.   In the alternative, the Class may also be certified because: the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members that would establish incompatible standards of conduct for Defendant;

23.   The prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

24.   Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

25.   Unless stated otherwise, the claims asserted here are applicable to all individuals who belong to the Paystub Class, Overtime Class, and/or Unpaid Regular Wages Class.

26.     Damages may be calculated, in part, from the employee information maintained in Defendants' records, so that the cost of administering a recovery for the Class can be minimized.  However, the precise amount of damages available to Plaintiffs and the other members of the Class is not a barrier to class certification.

27.     Plaintiffs seek a preliminary and permanent injunction and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described.

28.     Unless a class is certified, Defendant will retain monies received as a result of its wrongful conduct that was taken or withheld from Plaintiffs and proposed Class Members.  Unless a class-wide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

29.     Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

## V.      FACTUAL ALLEGATIONS

### A.      Failure to Provide Wage Statements Reflecting All Hours Worked and all Applicable Pay Rates

30.     As discussed above, Home Depot is one of the largest home improvement companies in the United States.  Home Depot owns and/or operates hundreds of retail stores throughout California, selling tools, construction products, and services to California customers.  Plaintiffs and others similarly situated were employed by Defendant as non-exempt retail employees in California.

31.     Plaintiffs and the Pay Stub Class received compensation in the form of an hourly wage and cash incentive bonuses.

32.     After Defendant paid the foregoing bonuses, it issued wage statements showing a single line item for "FLSA OTADJ." This line item reflects an overtime wages.  However, Defendant failed to issue any wage statements showing the correct,

adjusted hourly rate for overtime hours worked and the number of hours worked at each rate.  As a result, Plaintiffs and the Class are unable to determine whether they were paid all owed wages.

### B.    Failure to Pay Overtime Wages and Derivative Claims

33.    In an effort to attract and retain vital retail in-store employees and instill commitment and passion in its workforce, Home Depot introduced bonus plans like its Success Sharing Plan (introduced in 2002). Under these plans, employees receive periodic cash incentive awards for remaining with the company. Over the years, Home Depot has achieved great success in attracting and retaining employees as well as making them feel satisfied with their work through these bonus programs. As a testament to that, Home Depot has expanded these programs to reach virtually every Home Depot hourly employee at every store and has increased the amount of the cash awards to approximately $200 million per year. Home Depot pays these amounts at semi-annual parties aimed to boost employee morale and keep workers coming back year over year.

34.    Retention as well as worker engagement and morale are vital to Home Depot's success and are the driving reasons behind Success Sharing as well as other bonus programs. Home Depot competes in a tough retail sector that, as a whole, has turnover rates that can exceed 40 percent annually. Yet, Home Depot knows longer tenured employees better satisfy customers and result in lower advertising, retention, and training costs. As a result, to try to mitigate against turnover and a less experienced workforce, Home Depot commits itself to being above market in its wage offerings and closely tracks and monitors employee morale and engagement. In short, Success Sharing and other bonus payments are a central part of Home Depot's ability to hire and retain the ever expanding in-store workforce necessary to its bottom line and growth.

35.    Under these bonus plans, Home Depot pays a flat minimum amount, usually $100, so long as the employee meets minimum criteria like being in good

standing and remaining employed at the time of payment. There is no minimum hourly requirement or requirement that an employee work any overtime to obtain these bonuses.

36.    Employees may earn amounts over the minimum if the eligible bonus earnings for their store are high enough and if their total pay for the bonus period is sufficiently high as compared with the other workers at their store. However, for many employees, especially the many part-time employees at Home Depot, the minimum is all they will ever earn. Stated otherwise, unless and until the employee works enough to trigger a larger bonus that is based on a percentage of earnings, Home Depot's bonuses are a flat sum, minimum payment.

37.    Recognizing that these flat sum incentive bonuses are part of employees' "regular rates" and overall wages, Home Depot attempts to determine their per-hour value for purposes of complying with California overtime requirements. In other words, Home Depot correctly recognizes it is necessary to adjust overtime pay (i.e. one and one half of the regular rate) owed to its employees as a result of the additional bonus compensation. In so doing, Home Depot must treat these bonuses, which are earned periodically and all at once, as though they were earned on an hourly basis throughout the relevant earnings period (e.g. a six-month bonus period). This is sometimes referred to as reapportioning or recomputing the bonuses back over the workweeks during which they may be said to have been earned.

38.    Despite recognizing that it needs to provide additional overtime pay resulting from the incentive bonuses, Home Depot uses an incorrect, federal formula to reapportion its bonuses back over the relevant earnings periods and ignores California's more protective and expansive overtime protections. Home Depot takes the incentive bonus and divides it by *all hours* worked over the bonus period to determine the per hour value of the bonus. Home Depot then multiplies that hourly value by .5 to determine the overtime premium pay resulting from that per hour value (i.e. the .5 in the 1.5 times the regular rate) and multiplies that resulting number by

overtime hours worked during the bonus period to arrive at additional overtime due. For example, for an employee receiving a $100 bonus for a six month period in which he/she worked 480 regular hours and 20 overtime hours, Home Depot would pay additional overtime as follows: $100/(480+20 [i.e. 500]) = $.20 x .5 = $.1; 20 overtime hours at $.1 per hour = $2 in additional overtime owed.

39.     California requires employers determine the per hour value of a flat sum, incentive bonus or the increase in the regular rate by dividing the bonus by *regular hours* (not all hours). That per hour amount is then multiplied by 1.5 (not .5) to determine the value of the bonus for purposes of overtime hours worked during the bonus period. Using the same employee above working the same hours, Home Depot should but does not pay overtime as follows: $100/480 = $.2083 x 1.5 = $.3125; 20 overtime hours at $.3125 = $6.25 in additional overtime owed. Given the frequency and amount of these payments, Home Depot shorts overtime wages to its California workforce and putative class by hundreds of thousands if not millions.

40.     The result of Home Depot's use of the federal method for paying overtime as compared with California's impermissibly decreases the per hour value of the flat sum incentive bonuses with each additional hour of overtime worked.  In the example above, assume instead that the employee who received the flat sum $100 in incentive pay worked 40 instead of 20 overtime hours. Home Depot would calculate the per hour value of the bonus as $100 divided by 520 hours or $.19/hour. This lower overtime rate reduces the incentive for Home Depot to adhere to California's 8 hour work day as well as the resulting rate of pay that the employee receives for his overtime labor. California law prohibits this and instead keeps the per hour value of the employee's bonus consistent irrespective of amount of overtime worked.

**B.     Failure to Pay Meal/Rest Premiums and Reporting Time Pay**

41.     At times during their employment, Plaintiffs worked without being provided statutorily required breaks (meal and/or rest).  At times when Defendant

failed to provide Plaintiffs with statutorily required meal or rest breaks, they were not compensated with the wage penalties required by Labor Code Section 226.7. Specifically, when Defendant issued premium pay for missed breaks and meal periods, it paid the premium pay at the improper rate—namely, Defendant used the base hourly rate of pay and not the regular rate of pay adjusted to account for the Success Sharing and other bonuses, as required.

42.     At times during their employment, Plaintiffs received pay for "reporting time," as required by IWC Wage Order No. 2-2001(5).   However, similar to the meal/rest break premiums, Defendant paid reporting time based on the base hourly rate of pay and not the regular rate of pay adjusted to account for the Success Sharing and other bonuses, as required.

## VI.   FIRST CAUSE OF ACTION
### Failure to Provide Accurate Itemized Wage Statements
#### (By All Plaintiffs)

43.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

44.     Plaintiffs bring this claim individually and on behalf of the Classes.

45.     Labor Code section 226(a) requires Defendant to furnish each employee, at the time wages are paid, a statement containing an accurate, dated, itemized account, in legible writing showing, among other things, gross wages earned, net wages earned, and "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate."

46.     Defendant has failed and continue to fail to provide these required wage statements to Class Members.   Defendant provided Plaintiffs and members of the Classes with pay stubs.   However, the provided pay stubs failed to accurately state the gross and net wages as well as hourly rates and the number of hours worked at each rate.

47.     As such, Plaintiffs and other Class Members are entitled to payment from Defendants of the greater of actual damages or $50 for the initial pay period in

SECOND AMENDED CLASS ACTION COMPLAINT

1  which the violation occurred and $100 for each subsequent violation, up to a
2  maximum of $4,000.   Pursuant to Labor Code section 226(e), Class Members,
3  including Plaintiffs, are entitled to and seek reasonable attorneys' fees and costs
4  incurred and all applicable penalties.

5  **VII.   SECOND CAUSE OF ACTION**
   **Failure to Pay Overtime**
6  **(By Plaintiff Burcham)**

7  48.   Plaintiff Burcham re-alleges and incorporates by reference each and
8  every allegation set forth in the preceding paragraphs.

9  49.   Plaintiff Burcham brings this claim individually and on behalf of the
10  Overtime Class.

11  50.   California law requires overtime premium pay at not less than one and
12  one half times the regular rate for hours worked in excess of eight in a day or forty in
13  a week. See Cal. Lab. Code §§ 510 and 1198-1199; Cal. Code Regs., tit. 8, § 11040,
14  subd. (3)(A)(1) / IWC Wage Order 2-2001.

15  51.   Defendant failed to provide sufficient additional compensation to
16  Plaintiff Burcham and the Overtime Class for overtime hours worked as a result of
17  its failure to properly include bonuses in the "regular rate" of pay as explained more
18  fully above.

19  52.   Plaintiff Burcham and the Overtime Class are entitled to recover the full
20  amount of unpaid overtime, interest, applicable penalties, attorneys' fees, and costs.

21  **VII.   THIRD CAUSE OF ACTION**
   **Failure to Pay All Wages Earned Each Pay Period**
22  **(By All Plaintiffs)**

23  53.   Plaintiffs re-allege and incorporate by reference each and every
24  allegation set forth in the preceding paragraphs.

25  54.   Plaintiffs bring this claim individually and on behalf of the Unpaid
26  Regular Wages Class, including the Meal/Rest Premium Subclass and the Reporting
27  Time Pay Subclass.

28

55.     Pursuant to Labor Code § 204, Plaintiffs and the Meal/Rest Premium Class were entitled to receive on regular paydays all wages earned for the pay period corresponding to the payday.

56.     Pursuant to Labor Code § 204, Plaintiffs and the Meal/Rest Premium Class were entitled to receive on all regular pay days all wages and penalties to which they were entitled to recover pursuant to Labor Code § 226.7 on regular paydays for all non-compliant meal and rest periods during the pay period corresponding to the payday.

57.     Defendant failed to pay Plaintiffs and the Meal/Rest Premium Class for all wages and penalties earned and to which they were entitled each pay period on the regular payday for the pay period. Specifically, Defendant paid Plaintiffs and the Meal/Rest Premium Class their meal premiums at their *base* hourly rate, and not at their adjusted regular rate of pay (*i.e.*, the employee's base rate of compensation plus any adjustments to that rate arising from additional compensation the employee receives, including the Success Sharing bonus payments).

58.     In addition, Defendant failed to pay Plaintiffs and the Reporting Time Pay Subclass the correct hourly rate when paying "reporting time" under IWC Wage Order No. 2-2001.  Under section 5 of Wage Order No. 2-2001, each workday an employee is required to report for work, he or she must be paid at least two hours at their "regular rate of pay."  Defendant does not comply with this obligation because it pays reporting time pay at the employee's *base* hourly rate, and not at their adjusted "regular rate of pay" (*i.e.*, the employee's base rate of compensation plus any adjustments to that rate arising from additional compensation the employee receives, including the Success Sharing bonus payments).

59.     Plaintiffs and these Classes are entitled to recover the full amount of unpaid wages, interest, applicable penalties, attorneys' fees, and costs.

## VIII.  FOURTH CAUSE OF ACTION
### Failure to Pay All Wages Due Upon Termination
### (By All Plaintiffs)

60.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

61.    Plaintiffs bring this claim individually and on behalf of the Overtime Class.

62.    Pursuant to California Labor Code section 201, unpaid wages are due upon termination.

63.    Home Depot failed to pay the earned and unpaid overtime wages of Plaintiff Burcham and the Overtime Class members in the required amount of time. These individuals failed to receive all overtime wages due.

64.    Home Depot also failed to pay the earned and unpaid regular wages of Plaintiffs and the Unpaid Regular Wages Class members in the required amount of time.  These individuals failed to receive all regular wages due.

65.    Pursuant to California Labor Code section 203, "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days."

66.    Accordingly, Plaintiff and the Classes are entitled to recover waiting-time penalties under California Labor Code Section 203 in an amount equal to 30 times their daily wage following each termination of employment when they were not paid overtime appropriately (as explained in detail above).

## IX.    FIFTH CAUSE OF ACTION
### Violation of California's UCL
### (By All Plaintiffs)

67.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

68.     California Business & Professions Code, Sections 17200, et seq. ("UCL") prohibits any unlawful, unfair, deceptive, or fraudulent business practice and provides for restitution of unpaid wages.

69.     Defendant committed and continues to commit business practices within the meaning of California's UCL, including, but not limited to failing to pay the full amount of overtime and regular wages. The members of these Overtime Class Unpaid Regular Wages Class may receive restitution in the form of unpaid wages owed.

70.     The unlawful business practices described above have proximately caused monetary damages to Plaintiffs and to the general public.

71.     Pursuant to the UCL, Plaintiffs and members of the Overtime Class and the Unpaid Regular Wages Class are entitled to restitution of money or property acquired by Defendant by means of such business practices, in amounts not yet known, but to be ascertained at trial.

72.     Plaintiff's success in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the general public.

73.     Private enforcement of these rights is necessary as no public agency has pursued enforcement.  There is a financial burden incurred in pursuing this action, and it would be against the interests of justice to require the payment of attorneys' fees from any recovery in this action. Shumway is therefore entitled to an award of attorneys' fees and costs of suit pursuant to the UCL and California Code of Civil Procedure section 1021.5.

## X.     REQUEST FOR JURY TRIAL

Plaintiffs request a trial by jury.

*[Rest of page intentionally left blank.]*

SECOND AMENDED CLASS ACTION COMPLAINT

## XI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on the behalf of the members of the Class, pray for judgment as follows:

1.   For an order certifying the proposed Classes;

2.   For a declaration that Defendant violated the rights of Plaintiffs and other Class Members under the Labor Code, Wage Orders, and UCL;

3.   That Defendant be ordered to show cause why it should not be enjoined and ordered to comply with the applicable Labor Code provisions addressed herein; and for an order enjoining and restraining Defendant and its agents, servants, and employees related thereto;

4.   For actual damages or statutory penalties according to proof as set forth in Labor Code section 226 related to wage statements;

5.   For pre-judgment interest as allowed by Labor Code sections 218.5 or 1194 and Civil Code section 3287;

6.   For unpaid wages, statutory damages, enhanced damages, liquidated damages, and penalties (including civil penalties) according to proof, as permitted under the Labor Code (not including PAGA) and other statutes;

7.   For waiting time penalties according to proof pursuant to California Labor Code Sections 201, 202, and 203;

8.   For restitution to Plaintiffs and those similarly situated of all funds unlawfully acquired by Defendant by means of any acts or practices declared by this Court to violate the mandates established by California's UCL;

9.   For reasonable attorneys' fees, expenses and costs as provided by the Labor Code, UCL, and Code of Civil Procedure section 1021.5;

10.    For pre-judgment interest as allowed by California Labor Code Sections 218.5 or 1194 and California Civil Code Section 3287 and/or any other statute; and

11.    For such other and further relief as the court may deem just and proper.

Respectfully submitted:

Dated:  July 21, 2020              **NICHOLAS & TOMASEVIC, LLP**

By:    */s/   Shaun A. Markley*
Craig M. Nicholas (SBN 178444)
Shaun A. Markley (SBN 291785)
225 Broadway, 19th Floor
San Diego, CA 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org

*Attorneys for Plaintiffs*